May it please the Court, this is Jeremiah Johnson appearing on behalf of the petitioner, Ms. Vasquez. Good morning to you all. There are three issues I'd like to discuss today that I believe are before this Court, and briefly going to touch on one and then focusing more on the two second issues. First is that Ms. Vasquez did not, I want to make it clear, and she's never conceded that she committed marriage fraud. Although there's evidence in the record that suggests that she may have, this Court has consistently held that marriage other than love or companionship does not necessarily equal marriage fraud. So I wanted to put that out there and make sure that this Court's aware that she does not concede that point. But I think what's more important in front of this Court is the second issue about the waiver to remove the condition, and specifically that the agency failed to address the extreme hardship waiver. Ms. Vasquez and her former husband filed a joint petition. They appeared at the interview, and at that interview, Ms. Vasquez's husband withdrew his support of the petition. First of all, what evidence is that? He agreed that there had been the marriage was not genuine, but the agency went on to adjudicate the question. It doesn't appear that anybody actually withdrew the petition. It's my understanding that this case fits squarely under the Board's precedent in the matter of Mendez, where the petitioning husband went to the interview, signed and executed a statement withdrawing. But where is that statement in the case? His statement in the case is the Declaration, Administrative Record 401 and 402. And the Department of Homeland Security in the brief before the Immigration, Customs and Service, now Department of Homeland Security, in the brief before the courts argued that she was eligible, and they even ---- she filed two waivers under 216c4, one for extreme hardship and one for good faith. She filed two separate waivers of the ---- and the immigration judge entertained the good faith marriage and actually went into the ---- Kagan. First of all, there were two immigration judges, which confuses the whole thing. Yes, Your Honor. Okay. Let's start with the first one. The first one, as I understand it, understood that there had been an adjudication on the merits of the marriage fraud issue or of the conditional residency permit question and not a withdrawal. And that's why she said you're not eligible for the hardship waiver. Is that right? That's what the immigration judge understood that she was not ---- The first immigration judge. The first immigration judge understood that she was not eligible for a waiver. Because there hadn't been a withdrawal, or at least there had been an adjudication on the merits of the question. That was the immigration judge's understanding. And that's one of the primary issues that we take issue ---- that Ms. Vasquez takes issue with, is that a withdrawal, the petitioning, that interview was not ---- the petition or withdrew his support of what is understood as a joint petition. The petitioning, the U.S. citizen ex-husbands executed a statement indicating that the marriage fraud at that point, the interview didn't go forward. She was placed in removal proceedings for fraud, for misrepresenting herself at time of entry. She was not placed in removal ---- she was not charged with removal for failing to remove her condition until subsequently the large charge that the first immigration judge found that she failed to remove the condition. So there was an adjudication of that. Why have this ---- the hearing that we saw in the administrative proceedings of the immigration judge, the first immigration judge, discuss the nature of the marriage, the bona fide nature of the marriage, was to determine. And the judge gave Ms. Vasquez an opportunity to file both a good-faith marriage waiver and an extreme hardship waiver under 216c4, and then heard that, received into evidence, the department reviewed it, USCIS, Immigration National Service, reviewed that, and the immigration judge then went on a hearing to determine the bona fide nature of the marriage. And it was at that point that the service decided to issue a large and additional charge that the status was terminated. Right. So on page, I guess, 695 of the merits, there's something called termination of conditional residence status, right? And it says that he signed a swore statement indicating that the marriage had been entered for the sole purpose of obtaining immigration rights, and that's the document you're referring to. But he ---- I don't understand that he withdrew the petition. And the rest of that document goes on to adjudicate the merits of the question of whether there was or wasn't marriage fraud, no? That document, the record, we ---- Ms. Vasquez takes issue with that, is that Ms. Vasquez believes that her case falls under a matter of Mendes, where we see an execution ---- we don't have the administrative record of a matter of Mendes. Well, where is that issue dealt with in the administrative record? The issue of ---- The Mendes issue that was withdrawn and, therefore, there was no joint petition ever filed or adjudicated. The Department of Homeland Security or the immigration agency argued in its brief that it was a matter of Mendes, citing that the administrative record on 601 is the Department's brief, and that ---- No. Your position now is that the ---- if I understand you, your position now is that the joint petition was never adjudicated on the merits so that the marriage was not found fraudulent in an adjudication. And that's your position. Where was administratively did you make that position and was it rejected? Because I see the BIA going through the decisions of the two immigration judges and saying that they both, in essence, found that there was marriage fraud. But the marriage fraud that I understand that the BIA is addressing is the second joint ---- the second petition filed ---- Ms. Vasquez filed three, a joint petition, a good-faith marriage waiver, and an extreme hardship waiver. And my understanding is that the extreme hardship, the good-faith marriage waiver is what the Board is discussing and that the immigration judge went into length to determine whether or not that marriage was entered into good-faith marriage but was divorced. The immigration judge notes that they had a continuance for her to submit those two new forms, I-751, those two new waivers, so that the immigration judge could review the decision. Why allow the case to go forward on a good-faith marriage and an extreme hardship waiver? Nowhere in the decisions does the ---- the immigration judge and the agency goes to great length talking about the good-faith marriage and the nature of the marriage, but nowhere in the decision do they talk about, or nowhere in the record, extreme hardship that occurred during the two years of the marriage. And as such, that was not considered. Because extreme hardship was not even considered, there was no review of that waiver under 216C4A. Kagan. Well, it wasn't considered because of this understanding that she had, in fact, been terminated rather than had the petition withdrawn. And you're challenging that. That's correct. We are challenging that. All right. And then you said you had a third issue. Well, the third issue then goes, I think, to what the agency's reply brief offer was about, the 237A1H waiver. And we're talking about discretion here. What I'd like to point out is that although the waiver is ultimately discretionary, the agency is not allowed, and this Court has said, to just ignore factors. And we believe one of the factors that was ignored was the extreme hardship and failure to consider the extreme hardship in this waiver. Well, but here, I mean, this, as I understand it, what the second IG did was to say, even assuming eligibility, I'm going to deny this as a matter of discretion. And there is a second discretionary level to that. And that is unreviewable, no. Well, I think that was you look at the decision. I would say that she says that after equities, after acquired equities are never to be considered when they're given less weight. This Court has reviewed 237A1H waivers when the agency has not considered all the proper factors. And I believe it's a boilerplate. At the discretionary level rather than at the eligibility level? This Court came through. It did say it was on a – does not have jurisdiction under discretionary. That is correct. When they fail. That's an alias problem. But the other one doesn't get to that point. Although the BIA seems to think that the second I.J. made the discretionary determination with regard to both waivers, that didn't seem right to me because the second I.J. didn't seem to be dealing with the hardship waiver. I agree the second I.J. does not seem to be dealing with the hardship waiver. I note that I am a bit seated past my 10 minutes. I would be happy to answer any questions or call back. Thank you for your time. Good morning. May it please the Court. Eric Marsteller for the Attorney General. It's well established in this Court that the Court does not have jurisdiction to review the Board's discretionary determinations. Here, the Board denied Ms. Vasquez's request for waivers under 216c4 and 237a1h as the exercise of its ultimate discretion, and therefore, the Court – Well, that doesn't seem to be right because the second I.J. only had before her the 237 waiver and not the other one. And she only exercised her discretion with regard to that. I just don't see any evidence. The Board seemed confused about that when it got to the Board. But it just doesn't seem right to say that the I.J. exercised her discretion with regard to both waivers. She never – she didn't think there was eligibility on the first waiver because that's what's been held. So you're speaking just of the 216c4? Okay. We believe that the I.J. did address the hardship waiver, the 216c4, the second I.J. The second I.J.? Yeah. On page 68 of the record in her decision, she – at least insofar as she says she wasn't eligible in the exercise of her ultimate discretion. Right. She said she wasn't eligible, so she didn't exercise discretion. Well, she says on the bottom of page 68, about five lines up, that Ms. Vasquez would not or should not be entitled to any waiver for purposes of subsequent hardship application. The hardship – there's no hardship consideration in 237a1h. So the hardship – she's saying that the hardship only applies to the 216c4 waiver in this case. So the I.J. in that case, we believe, is referring to the – that she would deny in the exercise of her discretion any waiver – any hardship waiver, which would in this case be the 216c4 waiver. I agree, Your Honor. It's not as clear as it could be, but that's our reading of the immigration judge's decision. And that's also, we believe, the reading of the Board's decision. On page 4 of the record, the Board noted that it didn't – it found that Ms. Vasquez had not shown that the immigration judge's discretionary denial of both the 216c4 waiver and the 237a1h waiver were an abuse of discretion. So our position, then, is that both waivers were denied in the exercise of the agency's ultimate discretion. What about that? Okay. If that wasn't so, then we believe the first immigration judge had it right because the petition to remove the conditional status was denied – was adjudicated by DHS and denied on the merits because of the marriage fraud. I'm sorry? The first – I'm sorry. The first immigration judge had it right because the 216c4 waiver is only available to aliens who could not comply with Section C-1 of 216. C-1 says that you can remove the conditional status of your – conditional LPR status if you submit a joint petition and appear for an interview. Once those two things happen, if the – if the petition is not withdrawn, the agency adjudicates it. And once the agency has adjudicated it, you're no longer eligible for a 216c4 waiver as a matter of law. And that's what the first immigration judge found, and that's what the – Now, what is this 1998 document that's in the record on page 695 through 697? Because it seems to say that your husband signed a sworn statement indicating the marriage would enter for the sole purpose of obtaining immigration benefits and then says on the top of page 697, based on the foregoing facts, and since the petition for removal of conditional basis is a joint petition and no longer represents a signature of the United States citizen spouse, the petition may not be removed and therefore must be denied, which certainly sounds as if there was a withdrawal, no? It's not entirely clear. The both – at the interview, both Ms. Vasquez and her first husband admitted that her grandmother had paid him $3,000 to marry her. It's not entirely clear from that document whether the – as shown by the immigration judge's decision, one immigration judge found that the application had been adjudicated, the other found that there was a withdrawal. Well, I know she found that, but I'm saying look at the document. The document seems not to do that. It simply says it's supposed to be a joint petition and no longer represents a signature of the United States citizen spouse, so the petition may not be approved and therefore it must be denied. It certainly sounds like the problem isn't the merits. It's that it's not a joint petition. I think that's a fair reading. I think then you have to look at the Court's review standard here of the agency's factual determinations, to the extent, first off, we would show, as I said earlier, it's discretionary and there's no constitutional or legal issue here. It's a factual issue. So there's no jurisdiction. But even assuming that there was, it's reviewed under the compelling evidence standard, and we think that the first immigration judge's reading that it was adjudicated is a fair reading of the decision that you just referred to and that the record would not compel a different conclusion, although it is an unclear question, I would think. Well, okay. So the second immigration judge, you're saying, got it wrong? That's what the Board seemed to think in its decision. In the last paragraph of its decision, the Board just summarized both of the immigration judges' determinations on this issue, and then referred to it as an adjudication that relied on the first immigration judge's findings. But which decision are you defending? We're defending the Board's decision. And the Board seemed to, seemed to, at least the Board said that because the first immigration judge found that the petition was adjudicated, that it was found, being that she was not eligible. And then the Board went on to say that even if she, even if she could have, even if she had been statutorily eligible to file such a waiver, meaning that the, it was not adjudicated, that it was withdrawn, that the second immigration judge found no extreme hardship and that she would deny the matter in the exercise of her discretion. I mean, what's concerning to me is that the second immigration judge, who, if you read her as having applied her discretion to the 216 waiver, I don't know if she ever mentions the word 216. Well, I guess she, she does. She says because the admission of fraud is a withdrawal of support, he's, he's ineligible for a waiver. But she seems to be re-adjudicating what had already been adjudicated. How did she do that? This had been set, as I understand it, to consider a 237 waiver. That was the purpose of the second hearing. Now she's backtracking. I, I, you're, you're correct, Your Honor, that the second hearing was set for a consideration of the, of the 237A1H waiver. And she basically redid what the first IJ had done. Is that what happened? I think she expanded upon what the IJ had done. I'm sorry? I think, I think, I think it's fair to read that she expanded on what the first IJ had done. No, she didn't expand. She said the opposite. He said that the admission of fraud is a withdrawal of support and she's ineligible for the waiver and the, i.e., for the 237 waiver, because, in other words, she found he was ineligible for the 237 waiver, taking the record to be the opposite of what the first IJ had taken with regard to the ineligible for the 216 waiver. So she ends up ineligible for either waiver because of conflicting views about what happened in the denial. The first one, the first IJ says that there wasn't, there was a termination on the merits and, therefore, you're not, you're only eligible for 237. And this person says you're not eligible for 237 because there wasn't a waiver. There wasn't a termination on the merits. There was only a withdrawal. Is that what happened? I don't think that's what happened. I don't think that the 237A1 waiver was denied because you, the petition had been withdrawn. I think it was denied in the exercise of the immigration judge's discretion. That was the alternative. Okay. Yes. But her first view was to take the opposite view of the proceedings from the first IJ. She did come to different factual conclusions. Yes. She says, well, the board says, contrary to the prior immigration judge's finding that the Respondent's conditional resident status terminated automatically at the time of the withdrawal. She found that the government had taken the contrary, that she found that it terminated automatically so that it hadn't been adjudicated. Right. But I think what's important is that was to sustain the ground of removability, the large charge that was added before the second immigration judge hearing, which was that she was charged with removability because her status had been terminated. And I think in this section of the decision, the IJ is just simply saying, yes, your status was terminated, therefore, I find you removable. If the Court needs to, I see I'm out of time. Your time is up. We urge the Court to deny the petition for review if there's no further questions. Thank you. Okay. Thank you. Kevin? Yes. He's just arguing his submitting resolution. That's it.
judges: Strom, Schroeder, Berzon